Case No. 15-11071

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

ARMOUR ROBINSON, on Behalf of Herself and All Others Similarly Situated,
Plaintiff – Appellant,

v.

NEXION HEALTH AT TERRELL, INCORPORATED,
Defendant – Appellee.

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Case No. 3:12-CV-3853

# BRIEF OF APPELLEE

JOHN B. BROWN
Texas State Bar No. 00793412
ALICIA VOLTMER
Texas State Bar No. 00797605
JOSEPH A. MAGLIOLO
Texas State Bar No. 24074634
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
Preston Commons West
8117 Preston Road. Suite 500
Dallas, Texas 75225
Telephone: 214.987.3800
Facsimile: 214.987.3987

**ATTORNEYS FOR DEFENDANT-APPELLEE**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Nexion Health at Terrell, Inc., Defendant-Appellee.
- Nexion-Health, Inc., parent company to Nexion Health at Terrell, Inc., Defendant-Appellee.
- John B. Brown, Alicia Voltmer, and Joseph A. Magliolo, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., counsel for Defendant-Appellee.
- Douglas B. Welmaker, DUNHAM & JONES, P.C., and Adam W. Hanson, NICHOLS KASTER, PLLP, counsel for Plaintiff-Appellant.
- Armour Robinson, Plaintiff-Appellant.

/s/ John B. Brown
Attorney of Record for Defendant-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Nexion Health at Terrell, Inc. ("Nexion" or "Appellee") believes the facts and legal arguments relevant to this appeal are adequately presented in the parties' briefs and in the record. The case does not present any novel or complicated issues. Accordingly, Appellee asserts oral argument is unnecessary in this case and respectfully requests that the Court affirm the district court's ruling based on the briefs and record before it. Nonetheless, if the Court grants Appellant Armour Robinson's ("Robinson" or "Appellant") request for oral argument, Appellee asks that it be permitted equal time to argue the merits of its case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................2

STATEMENT REGARDING ORAL ARGUMENT ............................................3

TABLE OF CONTENTS ....................................................................................4

TABLE OF AUTHORITIES ...............................................................................6

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................9

STATEMENT OF THE CASE .........................................................................10

I. Procedural History .........................................................................................10

II. Statement of Facts .........................................................................................11

A. Robinson's Employment at Nexion ..........................................................11

B. Nexion's Timekeeping Policies ..................................................................11

C. Nexion's Timekeeping System ...................................................................12

D. Testimony Regarding Robinson's Time and Nexion's Pay Practices ..........................................................................................................13

E. Robinson's Time and Pay Records .............................................................15

III. Summary of the Argument...........................................................................17

ARGUMENT AND AUTHORITIES ...................................................................18

A. Standard of Review .........................................................................................18

B. Elements of an FLSA Claim ...........................................................................18

C. Robinson has no evidence of the fact or amount of overtime she now claims to have worked ..............................................................................20

1. Plaintiffs must provide "definite and certain" evidence that they worked overtime for which they were not compensated.......................20

2. Nexion maintained detailed records, which do not allow Robinson to rely on the relaxed *Mt. Clemens* standard ................................21

3. Because Nexion's records complied with the FLSA, Robinson's bare assetions concerning her time worked do not raise genuine issues of material fact ....................23

4. Robinson's reliance on *Mt. Clemens* is flawed because she has not demonstrated that Nexion's records were inadequate or that the third-party testimony is proper here ....................25

D. The district court properly did not consider Robinson's sham affidavit to create a fact issue because it contradicted her previous, sworn testimony without explantion ....................28

E. Robinson has no evidence that Nexion knew or should have known she worked unpaid overtime ....................31

1. A plaintiff must prove her employer knew or should have known she worked overtime and knew or should have known that she was not paid for it ....................31

2. An employer could not have known an employee worked unpaid overtime if the employee deliberately falsified her time records ....................32

3. Robinson has no evidence Nexion knew or should have known of her unreported overtime ....................34

4. The instruction to work off the clock Robinson alleged to receive is insufficient to establish a fact issue as to Nexion's knowledge ....................36

F. Conclusion ....................38

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................40

CERTIFICATE OF DIGITAL SUBMISSION ....................41

CERTIFICATE OF SERVICE ....................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albanil v. Coast 2 Coast, Inc.*,
444 F. App'x 788 (5th Cir. 2011) ....................27

*Amaro v. HSMTX/Stallones-Tomball, LLC*,
No. CIV.A. H-09-0477, 2010 WL 936541 (S.D. Tex. Mar. 11, 2010) ....................21

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946).................... *passim*

*Beliz v. W.H. McLeod & Sons Packing Co.*,
765 F.2d 1317 (5th Cir. 1985) ....................27, 28

*Brennan v. Gen. Motors Acceptance Corp.*,
482 F.2d 825 (5th Cir. 1973) ....................28

*Davis v. Fort Bend Cnty.*,
765 F.3d 480 (5th Cir. 2014) ....................18

*Davis v. U-Haul Co. of Miss.*,
No. 3:05-cv-365, 2006 WL 1984157 (S.D. Miss. July 12, 2006) ....................23

*Doe ex rel. Doe v. Dallas Independent School Dist.*,
220 F.3d 380 (5th Cir. 2000) ....................28

*Ford v. Houston Indep. Sch. Dist.*,
97 F. Supp. 3d 866, 892 (S.D. Tex. 2015)....................20

*Hardesty v. Cochran*,
621 F. App'x 771 (5th Cir. 2015) ....................29

*Harvill v. Westward Comm'cs, LLC*,
311 F. Supp. 2d 573 (E.D. Tex. 2004), *aff'd* 433 F.3d 428 (5th Cir. 2005) ....................37

*Harvill v. Westward Comm'cs, L.L.C.*,
433 F.3d 428 (5th Cir. 2005) .................... *passim*

*Ihegword v. Harris Cnty. Hosp. Dist.*,
555 F. App'x 372 (5th Cir. 2014) ....................36, 37

*Ihegword v. Harris Cnty. Hosp. Dist.*,
929 F. Supp. 2d 635 (S.D. Tex. 2013) ....................24, 36, 37, 38

*Johnson v. Heckmann Water Res. (CVR), Inc.*,
758 F.3d 627 (5th Cir. 2014) ....................19

*Lawrence v. Fed. Home Loan Mortgage Corp.*,
808 F.3d 670 (5th Cir. 2015) ....................18

*Miller v. Metrocare Servs.*,
809 F.3d 827 (5th Cir. 2016) ....................18

*Newton v. City of Henderson*,
47 F.3d 746 (5th Cir. 1995) ....................19, 32, 33, 35

*Reeves v. Int'l Tel. & Tel. Corp.*,
616 F.2d 1342 (5th Cir. 1980) ....................19, 20

*Rosales v. Lore*,
149 F. App'x 245 (5th Cir. 2005) ....................20

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
72 F.3d 489 (5th Cir. 1996) ....................28

*Sales v. Bailey*,
No. 2:12-CV-00056-SA-SAA, 2014 WL 3897726 (N.D. Miss.
Aug. 8, 2014) ....................21, 22

*Turner v. The Saloon, Ltd.*,
595 F.3d 679 (7th Cir. 2010) ....................23

*Uhler v. Galesi Mgmt. Corp.*,
No. 3:98-CV-0005, 1999 WL 20949 (N.D. Tex. Jan. 8, 1999)........24, 33, 34, 35

*Von Friewalde v. Boeing Aerospace Ops., Inc.*,
339 F. App'x 448 (5th Cir. 2009) ....................32

*White v. Baptist Mem'l Health Care Corp.*,
699 F.3d 869 (6th Cir. 2012) ....................33

**Statutes**

29 U.S.C. § 201, *et seq.* ........................................................................... *passim*

29 U.S.C. § 255(a) ........................................................................................ 17

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court correctly granted summary judgment for Nexion on Appellant's FLSA overtime claim because she wholly failed to present the required "definite and certain" evidence of either the fact that she worked overtime, or the amount of it.

2. Whether the district court properly refused to hold that Appellant's affidavit, which contradicted her previous, sworn testimony without explanation, created a fact issue sufficient to defeat summary judgment.

3. Whether this Court may affirm the district court's decision on the alternative ground that Nexion demonstrated that it neither knew nor should have known about Appellant's alleged overtime, a necessary element of her FLSA claim.

# STATEMENT OF THE CASE

## I. Procedural History

Plaintiff Armour Robinson filed her Original Complaint on September 24, 2012 against Defendant Nexion, alleging that Nexion failed to pay her and those similarly situated to her overtime for all hours they worked in a week in excess of forty, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). ROA 9-17. On May 2, 2013, The Honorable Sam Lindsay referred the case to Magistrate Judge Renee Harris Toliver. ROA 50.

After conducting discovery, Nexion moved for summary judgment on April 30, 2014, arguing that Robinson (1) failed to show that Nexion knew or should have known that she was working overtime, and even if she had, (2) she did not demonstrate with "clear and definite" evidence either that she had worked overtime, or the amount of the alleged overtime. ROA 173-195. Robinson filed a response on June 25, 2014, and Nexion replied on July 9, 2014. ROA 757-785, 867-887.

Magistrate Judge Toliver recommended on October 20, 2014 that Nexion's Motion for Summary Judgment should be denied. ROA 910-923. Nexion objected to this recommendation on November 3, 2014. ROA 925-948. On March 31, 2015, Judge Lindsay rejected all of Magistrate Judge Toliver's recommendations, and granted Nexion's Motion for Summary Judgment. ROA

989-995. Judge Lindsay entered his judgment the same day, and this appeal followed.

## II. Statement of Facts

### A. Robinson's Employment at Nexion

Nexion operates a nursing home in Terrell, Texas. ROA 395. Nexion hired Robinson in August 2008 as a Licensed Vocational Nurse ("LVN"), employed her full time, and initially paid her $19.50 per hour. ROA 392. Robinson initially reported to Nexion's Director of Nursing, Mary Cole. ROA 397. Kristi Hurst replaced Cole as Director of Nursing in July 2011. ROA 397, 526. After she renewed her LVN license, Robinson reported to Assistant Director of Nursing Mae White, until White left Nexion sometime in 2012, after which Robinson reported directly to Hurst. ROA 397. On May 16, 2012, Nexion terminated Robinson's employment after she falsified documentation about patient care. ROA 393, 423.

### B. Nexion's Timekeeping Policies

Nexion maintains a policy that prohibits its employees from working off the clock. Employees are not permitted to work through meal breaks or outside their scheduled shifts without approval. The company's employee handbook provides:

> Non-exempt/hourly associates may not start before their starting time, work beyond their scheduled quitting time, or work through meal or break periods, unless authorized by a supervisor. Nexion Health does not permit off-the-clock work. At the end of each pay period, each

> associate should review the accuracy of his or her time record.

ROA 364.

Robinson was aware of these policies. Nexion provided her with a copy of its handbook and she admitted under oath that she understood the company's policy against off-the-clock work. She testified as follows:

> Q: [Y]ou were instructed by the company that you were not to work off the clock, correct?
>
> **A: Yes.**
>
> Q: And you were instructed that you weren't to work through meal breaks that you were taking, correct?
>
> **A. Yes.**

ROA 393, 401, and 422.

C. <u>Nexion's Timekeeping System</u>

Robinson and other Nexion employees clocked in and out each day by swiping a plastic time card on an electronic time clock at the front of the facility. ROA 393. Robinson used her time card to clock in or out when she arrived at the facility, before and after meal breaks, and at the end of her shift. ROA 400. Nexion's timekeeping system recorded each of those punches and allowed Robinson to review what punches were recorded on a particular day. ROA 404.

Robinson could also submit a "missed punch" form to correct any mistakes or inaccuracies in her clock-in and clock-out times. ROA 402.[1] For instance, Robinson would submit a missed punch form if she forgot to clock in after a meal break. *Id.* Nexion's human resources director, Mary Lee Robinson ("Mary Lee") (who is Robinson's cousin), would use the missed punch forms to enter or change punches in the timekeeping system. ROA 510. Occasionally, Mary Lee would identify missed punches in Robinson's time and make changes in the timekeeping system based on Robinson's oral explanation, though she still requested Robinson fill out a missed punch form. ROA 511.

D. Testimony Regarding Robinson's Time and Nexion's Pay Practices

Robinson's typical meal breaks lasted about thirty minutes, and she would clock in and out before and after the breaks. ROA 406. Nexion instructed Robinson not to work off the clock and not to work through any meal breaks she took. ROA 401. Robinson understood that nobody from Nexion could tell what she was doing during her meal breaks and that Nexion's only knowledge about her meal breaks came from her punches. ROA 415. Nexion's time records indicate that Robinson did not clock out for meals on 159 shifts in the three years before she filed suit, and Nexion paid her for that time for each shift. ROA 203-364, 369-

[1] Robinson, at Nexion's request, also used the missed punch forms on days when she had not clocked out for lunch to let Nexion know why she had not been able to take a lunch break that day. ROA 411.

383. But contrary to the company's policy, Robinson now claims she sometimes worked through her lunch break after clocking out because she thought it was necessary to complete her work. ROA 401.

Robinson also claims that over the last "year, year and half, two" of her employment, she clocked out and continued working "almost every day." ROA 413. She testified that Assistant Director of Nursing Mae White urged her and other LVNs to clock out soon after their shifts were over. *Id.* White did not ask Robinson to clock out and continue working or to complete work off the clock. *Id.* In fact, according to Robinson, White told her, "I cannot tell you to work off the clock, but I will tell you your work has to be done before you leave the facility." ROA 417.

Robinson cannot specify how much work she allegedly performed off the clock. *Id.* Nor can she identify the days, or even the weeks, she allegedly worked without compensation. *Id.* Indeed, during the relevant period, she never reported any unpaid overtime to Nexion. ROA 418. And Robinson admitted during her deposition that Nexion paid her for all the time she reported:

> Q: Was there any time that you reported working, that you were not paid for?
>
> **A: No.**
>
> Q: So when you reported that you worked, the company paid you?
>
> **A: Yes.**

*Id.* Working through lunch breaks and continuing to work after clocking out were not regular practices at the facility. Mary Lee, Nexion's human resources director and Robinson's cousin, never knew that Robinson worked off the clock. COA 512.

E. Robinson's Time and Pay Records

Nexion has three nursing shifts: 6:00 a.m. to 2:00 p.m., 2:00 p.m. to 10:00 p.m., and 10:00 p.m. to 6:00 a.m. ROA 201. Robinson typically worked the 6:00 a.m. to 2:00 p.m. shift, but she would frequently need to work past the end of her shift to complete her work, and she sometimes worked a double shift. ROA 400, 413. Nexion calculated the wages owed to employees based on their time punches and, for any hours worked above forty in a week, paid its employees overtime wages of one and one-half times their regular wages. ROA 408.

Robinson frequently worked through a shift without clocking out for a meal break and almost always worked past the scheduled end of her shift. In the three years before she filed suit, Robinson worked 159 shifts of at least five hours without reporting a meal break. ROA 276-356, 369-383. Likewise, during the three years before she filed this lawsuit, Robinson clocked out well after the end of nearly every shift. *See id.* During that time, she reported 23,417 minutes (or 390.28 hours) after the scheduled end of her shifts. *See id.* On average, Robinson

reported approximately 41 minutes per day on the clock after her shift ended. *See id.*

As a result of her work, Robinson reported overtime in nearly every pay period. ROA 408. Nexion paid her one and one-half times her regular rate for each hour of overtime she reported. *Id.* In total, Nexion paid Robinson overtime pay of $2,184.03 during the relevant period in 2009, $8,232.39 in 2010, $5,336.86 in 2011, and $2,828.49 in 2012. ROA 203-271. Robinson's total overtime pay during this period was $18,581.77. *Id.*

During her deposition, Robinson admitted that Nexion paid her for all the time she worked and that she has no memory of ever complaining about overtime during the relevant period. ROA 408-409, 418. Robinson further testified that she has no reason to believe any of her time-punch records[2] were inaccurate. ROA 406-407, 424-504. Robinson received pay stubs, which listed the number of regular hours and overtime hours for which Nexion paid her. ROA 408. She did not keep separate records of her work time and does not have any pay records other than the ones produced by Nexion in this lawsuit. ROA 399, 407. If she had any questions about her pay, Robinson could have raised the issue with her cousin Mary Lee. ROA 404. When she did have questions about her time, Robinson found Mary Lee to be responsive. ROA 405. But Robinson does not remember

[2] For the three years prior to her filing suit.

questioning Mary Lee or anyone else from Nexion about the number of overtime hours she was paid in the three years before she filed suit. ROA 408-409.[3] And she never called the company's employee-relations hotline about the subject, either. ROA 416.

## III. Summary of the Argument

The district court did not err in grating summary judgment on Robinson's FLSA claim because she did not provide "definite and certain" evidence that she worked overtime, or the amount of that alleged overtime. Nexion maintained detailed pay records for Robinson, which she admitted during her deposition she had no reason to doubt, and she was frequently paid overtime. As a result, because Nexion maintained its records in compliance with the FLSA, Robinson was required to provide "definite and certain" evidence to support her claims. She did not. Robinson has only provided her unsupported averments about alleged uncompensated overtime, which is insufficient to create a fact issue. Additionally, the sham affidavit she provided in support of her summary judgment response should not create a fact issue because it contradicted, without explanation, her sworn deposition testimony. Alternatively, this Court may affirm the district

[3] Robinson testified that she raised a concern in August 2009 with Mary Lee that she had not been paid for 15 hours of overtime. ROA 405. But Robinson filed this suit on September 24, 2012, ROA 9-17, so any failure to pay overtime in August 2009 or before is outside of the maximum three-year statute of limitations period. 29 U.S.C. § 255(a).

court's decision on the ground that Appellant failed to demonstrate that Nexion knew or should have known that she worked overtime.

## ARGUMENT AND AUTHORITIES

### A. Standard of Review

The Fifth Circuit reviews summary judgment rulings *de novo*. *Lawrence v. Fed. Home Loan Mortgage Corp.*, 808 F.3d 670, 673 (5th Cir. 2015). "Summary judgment is required 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). The non-moving party cannot defeat summary judgment by offering "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citations and internal quotation marks omitted). This Court "may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016) (citation omitted).

### B. Elements of an FLSA Claim

"The FLSA provides that 'no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'"

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (quoting 29 U.S.C. § 207(a)(1)). To prove a *prima facie* case for violations of the FLSA, a plaintiff must provide "definite and certain" evidence both that she worked uncompensated overtime hours, and the amount of time worked. *See Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ("*Mt. Clemens*"); *see also Johnson*, 758 F.3d at 630. Further, the plaintiff must also demonstrate that her employer knew or should have known that she was working overtime and that she should have been paid for that time. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995).

Because the district court made its determination based on Robinson's failure to provide "definite and certain" evidence concerning the existence or amount of overtime worked, and Robinson has only argued against this element in her brief, Nexion will address it first. Nexion will then turn to the argument it made in its motion for summary judgment (which Robinson did not address in her brief) that summary judgment was independently appropriate because Robinson failed to show that Nexion knew or should have known that she was working overtime.

### C. Robinson has no evidence of the fact or amount of overtime she now claims to have worked.

1. Plaintiffs must provide "definite and certain" evidence that they worked overtime for which they were not compensated.

Generally, a plaintiff "bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves*, 616 F.2d at 1352; *see also Ford v. Houston Indep. Sch. Dist.*, 97 F. Supp. 3d 866, 892 (S.D. Tex. 2015) ("Regardless of what it is termed, it is well established that the plaintiff bears the burden of proving that he was not properly paid for the work he performed."). If an employer's records are properly maintained and accurate, those records may be relied upon to prove an FLSA claim. *See Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir. 2005). When an employer's records are "inaccurate or inadequate," the employee may prove their case by offering "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687.

Federal courts have established a high standard for what can be considered "inaccurate or inadequate" records that allow plaintiffs to utilize the relaxed "just and reasonable inference" standard. For example, in one case where the defendant maintained records based on their employees clocking in, and where it paid the plaintiff overtime for working more than forty hours in a week, the court would not allow the plaintiff to rely on her recollection of additional, alleged overtime

worked to prove her FLSA claim. *See Amaro v. HSMTX/Stallones-Tomball, LLC*, No. CIV.A. H-09-0477, 2010 WL 936541, at *6 (S.D. Tex. Mar. 11, 2010). Even though the plaintiff testified that she "often worked through her lunch break" and she thought there were five times that she worked approximately thirty minutes after she clocked out, the testimony was insufficient to overcome the defendant's records that showed she worked overtime and was compensated for it. *See id.*

But, in a case where the court found pay records riddled with inconsistencies and omissions, the court held that the pay records to be insufficient. *See Sales v. Bailey*, No. 2:12-CV-00056-SA-SAA, 2014 WL 3897726, at *12 (N.D. Miss. Aug. 8, 2014). The plaintiff was allowed to rely on the relaxed "just and reasonable inference" standard in *Sales* only because the defendant-employer's records included spans of time that were not accounted for, and for the records that did exist, the employer had plainly altered the rates of pay in the records to obfuscate the fact that overtime had been worked. *Id.*

2. Nexion maintained detailed records, which do not allow Robinson to rely on the relaxed *Mt. Clemens* standard.

The records Nexion produced and relied upon in this case do not nearly rise to the level of those in cases like *Sales* that may be overlooked in favor of the Plaintiff's bare recollection of her time worked. Here, Robinson clocked in and out using Nexion's electronic time-keeping system. ROA 393. Robinson used her time card to clock in or out when she arrived at the facility, before and after meal

breaks, and at the end of her shift. ROA 400. The timekeeping system recorded each of those punches and allowed Robinson to review what punches were recorded on a particular day. ROA 404.

Nexion produced records that demonstrate that in the three years before she filed suit, Robinson worked 159 shifts of at least five hours without reporting a meal break. ROA 276-356, 369-383. Likewise, during the three years before she filed this lawsuit, Robinson clocked out well after the end of nearly every shift. *Id.* During that time, she reported 23,417 minutes (or 390.28 hours) after the scheduled end of her shifts. *Id.* Robinson averaged approximately 41 minutes per day on the clock after her shift ended. *Id.* Thus, Robinson reported working overtime in nearly every pay period in the three years before suit and admits that Nexion paid her for all the overtime she reported. ROA 408, 418.

Nexion recorded her time, paid her according to the time she entered, and provided Robinson with those time records. *Id.* Robinson has no reason to believe any of those time records were inaccurate. ROA 406-407, 424-504. Robinson received pay stubs, which listed the number of regular hours and overtime hours for which Nexion paid her. ROA 201. She did not keep separate records of her work time and does not have any pay records other than the ones produced by Nexion in this lawsuit. ROA 399, 407. Therefore, these records do not contain the sort of gaps or inaccuracies that would allow Robinson to rely instead on the

relaxed "just and reasonable" inference standard, as she has even conceded that they are accurate.

3. Because Nexion's records complied with the FLSA, Robinson's bare assertions concerning her time worked do not raise genuine issues of material fact.

As established above, because Nexion kept time records in compliance with the FLSA, Robinson must produce "definite and certain" evidence that she worked uncompensated overtime hours. *See Davis v. U-Haul Co. of Miss.*, No. 3:05-cv-365, 2006 WL 1984157, at *3 (S.D. Miss. July 12, 2006) (*citing Reeves*, 616 F.2d at 1351).

Where a plaintiff does no more than testify that she worked uncompensated overtime, her claim should not withstand summary judgment. *Harvill v. Westward Comm'cs, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). A plaintiff cannot survive summary judgment by relying only on "unsupported *ipse dixit* [that] is flatly refuted by the hard evidence." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690-91 (7th Cir. 2010) (holding that "[a]lthough [the plaintiff] disputes the accuracy of [the defendant's] records, his mere assertions are insufficient to create a jury issue.").

In *Harvill*, another FLSA case, the plaintiff (1) offered no factual allegations to substantiate her claim and (2) presented no evidence of the amount of time she worked without compensation. The Fifth Circuit concluded that the plaintiff's

"unsubstantiated assertions . . . failed to raise a genuine issue of material fact as to whether she went uncompensated for overtime work." *Harvill*, 433 F.3d at 441. Likewise, in *Uhler*, the court held that the plaintiff's testimony that he worked two hours of overtime a day did not raise a genuine issue of material fact where the employer maintained time records and the employer paid the plaintiff overtime he reported working. *Uhler v. Galesi Mgmt. Corp.*, No. 3:98-CV-0005, 1999 WL 20949, at *5 (N.D. Tex. Jan. 8, 1999). And in *Ihegword*, the plaintiff testified that she "often worked overtime, in excess of 40 hours during a seven-day workweek." *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 665 (S.D. Tex. 2013) ("*Ihegword I*"). She further estimated "to the best of her memory" that the amount of unpaid overtime was about 50 hours a month or 12 hours a week. *Id*. at 667. The plaintiff's time records, though, showed that she worked and was paid for overtime. *Id*. at 665-666. The court concluded that the plaintiff's testimony was unsubstantiated and, in light of the time records, did not create a genuine fact issue about whether the plaintiff worked unpaid overtime. *Id*. at 667. Moreover, the court concluded her evidence about the *amount* of unpaid overtime was both speculative and unsubstantiated and therefore did not create a genuine fact issue, either. *Id.* at 668.

Though she maintains that she worked off the clock through lunch and after her shift, in light of the time and pay records that show she regularly reported and

Nexion regularly paid her overtime, her "unsubstantiated assertions . . . failed to raise a genuine issue of material fact as to whether she went uncompensated for overtime work." *See Harvill*, 433 F.3d at 441. And while she maintains she worked off the clock, Robinson testified she could not estimate the amount of time for which she seeks compensation. ROA 417. Nor does she offer any basis from which to calculate overtime. Even if she identified an amount of unpaid overtime, the amount would be both speculative and unsubstantiated, and it therefore also would not create a genuine fact issue. *See Ihegword I*, 929 F. Supp. 2d at 668.

4. Robinson's reliance on *Mt. Clemens* is flawed because she has not demonstrated that Nexion's records were inadequate or that the third-party testimony is proper here.

Robinson's reliance on *Mt. Clemens* is fundamentally flawed in two key respects. First, the case applies to situations where records are inadequate or missing. Because the record evidence demonstrates that the records *were* accurate and complete, the standard announced in *Mt. Clemens* is inapplicable. Second, Robinson mistakenly relies on *Mt. Clemens* in an attempt to bootstrap non-party, "representative" testimony that did not concern her allegedly uncompensated time worked into evidence to bolster her claims. *Mt. Clemens* permits such testimony only where the parties testifying have personal knowledge of the plaintiff's situation and are representational of the plaintiffs on behalf of those for whom they

are testifying. This is not the situation here and, therefore, her reliance on *Mt. Clemens* is misplaced.

*a. Robinson has not shown that Nexion's records were incomplete or inaccurate.*

Robinson has failed to demonstrate that the records Nexion maintained were incomplete or inaccurate. Indeed, in her deposition, Robinson admitted she had no reason to question the accuracy of these records, and she was paid all overtime that she reported. ROA 406-407, 418, 424-504. But Plaintiff repeatedly falls back on *Mt. Clemens*, which she purports allows her to provide mere estimates of her time in order to succeed on her wage claims.

This reliance is inappropriate because, as *Mt. Clemens* states, the plaintiff may only fall back on the "just and reasonable" inference standard *after* showing that the records are inadequate or inaccurate. *See Mt. Clemens*, 328 U.S. at 687-688. This standard is meant to provide an avenue of relief for plaintiffs where there are inadequate or inaccurate records, because without relaxing it, a plaintiff would be "penalize[d] . . . on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* at 687. The purposes animating the Supreme Court to allow estimates in *Mt. Clemens* are not present here, where Nexion provided complete records to Robinson, without gaps, and which she conceded were accurate. ROA 406-407, 424-504. In her brief, Robinson merely assumes without explaining that the records are incomplete or inadequate. Therefore,

because the records are complete and adequate, as explained above, Robinson may not rely on the relaxed standard established in *Mt. Clemens*.

*b. The third parties upon whom Robinson attempts to rely did not testify to personal knowledge of her hours, nor were they representational.*

Robinson also mistakenly relies on *Mt. Clemens* in an effort to introduce testimony of non-parties to bolster her claims. She asserts that *Mt. Clemens* and its progeny allow for her to rely on the testimony of co-workers to prove her claims concerning alleged, uncompensated overtime.

But the limited situations where courts allow representational testimony relate to situations quite different than Appellant's. The "[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985). As this Court noted in one of the cases upon which Robinson relies, "most cases resting on representational evidence involve a fairly small employee population, a limited number of employee positions, and uniform work tasks." *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 806 (5th Cir. 2011) (citation, quotation marks, and brackets omitted). The employees in *Albanil* were representational because they held the same positions, had the same or similar duties, and received pay similar to the named plaintiff. *See id.* at 807-08.

Similarly, in another case upon which she relies, the Fifth Circuit held it was not clear error to allow some plaintiffs not to testify in a case where *sixteen* representative plaintiffs testified on the group's behalf. *See Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973).

By contrast, Robinson has not demonstrated that the people who provided the testimony upon which she relies had personal knowledge of her situation, as this Circuit requires. *See Beliz*, 765 F.2d at 1331. Robinson relies on the testimony of co-workers, but they testified only about their own experiences, not Robinson's. *See* Appellant's Br. at 10-13. Further, Robinson has not even attempted to demonstrate that the co-workers on whose testimony she relies are representative of hers. Therefore, Appellant may not rely on the co-workers' testimony to reverse the district court's decision to grant summary judgment.

**D. The district court properly did not consider Robinson's sham affidavit to create a fact issue because it contradicted her previous, sworn testimony without explanation.**

The Fifth Circuit does not permit a party "to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992)); *see also Doe ex rel. Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 286 (5th Cir. 2000) ("If a party who has been examined at length on deposition could

raise an issue of fact simply by submitting . . . [an] affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.”). If a party “was thoroughly questioned” on an issue and answered the question without qualification, then “contradictory averments in the subsequent affidavit will not create a genuine dispute of material fact.” *Hardesty v. Cochran*, 621 F. App’x 771, 778 (5th Cir. 2015) (citing *S.W.S. Erectors, Inc.*, 72 F.3d at 495).

Robinson was extensively questioned about her alleged uncompensated overtime, and she denied knowing how much unpaid overtime she was owed:

> Q: What is it that you’re seeking to recover in this lawsuit?
>
> **A: The pay that I worked off the clock. And I have no proof, but it happened.**
>
> Q: Can you identify the weeks where you performed work, for which you think you’re owed additional pay?
>
> **A: No, I can’t provide proof.**
>
> Q: Do you know the amount of time you’re seeking to recover in this lawsuit?
>
> **A: No. My attorney -- I let my attorney handle that.**
>
> Q: Well I don’t get to ask him any questions under oath, so I’m just trying to figure out, as you sit here today, what your knowledge is. Do you have a dollar figure in mind that you’re seeking to recover?

**A: No.**

ROA 417. She further denied that any of Nexion's time records were inaccurate. ROA 406-407.

Robinson changed her story when she submitted her declaration in support of her summary-judgment response. In it, she testified, "I worked an average of 30 minutes per day through my lunch on those days I was forced to clock out or was forced to fill out a missed punch sheet. Additionally, I worked an average of 1.25 hours a week off the clock at the end of my shift." ROA 808.

The Court should disregard Robinson's estimate of her unpaid overtime. At Robinson's deposition, Nexion questioned her about and offered her the opportunity to state how much unpaid overtime she had worked, but she said she did not know and that she "let [her] attorney handle that." ROA 417. Indeed—based on her current argument that only an estimate is sufficient to recover on an FLSA claim—Robinson could have at least hazarded such an estimate about the amount of overtime she sought. She did not. Instead, she testified she did not know the amount of unpaid overtime she sought and that her attorney would handle that. In her declaration, Robinson also contradicts her deposition testimony that Nexion's pay records were accurate. By making a specific estimate of her unpaid overtime and denying the accuracy of Nexion's time records, Robinson in her declaration directly contradicts her deposition testimony, and she offers no

explanation for the contradiction. Her current arguments that her testimony was only "inartful" attempts to elide the declaration that plainly contradicted her unqualified, unambiguous answers to questions concerning key aspects of her FLSA claims. *See* Appellant's Br. at 48. The Court should therefore ignore that testimony.

Because her declaration testimony is the only evidence of any sort that she presented regarding the amount of time she worked, and that testimony should not be considered, Robinson has failed to produce evidence demonstrating a fact issue on the amount of unpaid overtime she worked. The Court should therefore affirm the district court's decision regardless of the Court's assessment of the accuracy of Nexion's time records.

**E. Robinson has no evidence that Nexion knew or should have known she worked unpaid overtime.**

This Court should also affirm the district court's decision because Robinson has no evidence to establish that (a) Nexion knew or should have known she worked overtime or (b) that Nexion knew or should have known she was not paid for the overtime she says she worked.

1. <u>A plaintiff must prove her employer knew or should have known she worked overtime and knew or should have known that she was not paid for it</u>.

To recover unpaid overtime under the FLSA, a plaintiff must prove that she was "employed" during the time periods for which she seeks overtime pay.

*Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). A plaintiff is "employed" if her employer had either actual or constructive knowledge that she worked overtime.[4] *Id*. Moreover, an employer's knowledge that an employee is working overtime is not enough to make it liable—the employer must also know that the employee is not being paid for that work.

2. An employer could not have known an employee worked unpaid overtime if the employee deliberately falsified her time records.

When an employer provides employees a procedure for reporting overtime and pays for overtime that is reported, but an employee fails to report overtime, the employer is not liable under the FLSA. *Von Friewalde*, 339 F. App'x at 459 (holding that employees who were paid when they informed employer of overtime could not recover pay for unreported overtime when they "were forced by circumstances (perhaps of their own making) to work a few minutes late but never informed their superiors.").

Employers have a right to insist that employees comply with procedures for claiming overtime pay. *Newton*, 47 F.3d at 749 (quotation marks omitted). Conversely, "an employee has a duty to notify his employer when he is working extra hours." *Von Friewalde*, 339 F. App'x at 459.

[4] Constructive knowledge exists if an employer would by exercising reasonable diligence become aware of an employee's working overtime. *Von Friewalde v. Boeing Aerospace Ops., Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009).

Where the acts of an employee prevent an employer from acquiring knowledge of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 875 (6th Cir. 2012) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)). Thus if "the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Newton*, 47 F.3d at 748.

In *Newton*, for example, the Fifth Circuit held that the plaintiff's employer was not liable for unpaid overtime the plaintiff had worked because the plaintiff never reported the work. *Newton*, 47 F.3d at 749. The employer required employees to submit a special payroll form to request pay for overtime they had worked. *Id*. The plaintiff alleged he worked overtime but conceded he never followed the procedures for requesting payment for the time. *Id*. The Fifth Circuit concluded that the employer reasonably relied on the plaintiff's "payroll submissions as a reliable indicator of the number of hours being worked by [the plaintiff]." *Id*. at 749-50.

Likewise, in *Uhler*, the court held that an employee's failing to report overtime he allegedly worked precluded him from recovering on his overtime claim. *Uhler v. Galesi Mgmt. Corp.*, No. 3:98-CV-0005, 1999 WL 20949, at *7

(N.D. Tex. Jan. 8, 1999). In that case, the plaintiff never recorded any of his alleged overtime on the timesheets he submitted to his employer and never complained about working unpaid overtime. *Id.* at *5. The plaintiff testified that he was paid overtime when he reported it. *Id.* The Court concluded, "[S]ince [the employer] regularly paid [the plaintiff] for overtime that he included in these time records, [the employer] was entitled to rely on the representations [the plaintiff] made on his time cards and was permitted to assume that [the plaintiff] was working no additional overtime." *Id.* at *6.

3. Robinson has no evidence Nexion knew or should have known of her unreported overtime.

Even if Robinson actually worked the unpaid overtime she now seeks, she still cannot prevail on her overtime claim because she can present no evidence that Nexion knew or should have known that she worked unpaid overtime. There is no dispute that Nexion required its employees to record all the time they worked and that Robinson was aware of this policy. ROA 364, 401. Further, nobody from Nexion had any way of knowing what Robinson was doing on her lunch breaks, and Nexion's only information about her lunch breaks came from Robinson's time punches. ROA 415-416. The record also shows that Robinson clocked out well after the end of her shift on nearly every shift in the three years before she filed suit, ROA 406-407, 424-504, she reported overtime in nearly every pay period, ROA 408, and that Nexion paid Robinson for every hour she worked. ROA 418.

Further, Robinson was not aware of any overtime she reported but was not paid. ROA 408-409. And she has also admitted that she had no reason to believe any of her time records were inaccurate. ROA 406-407.

Robinson further admits that she never reported the overtime she now seeks. ROA 401, 413. And she never complained to her cousin and Nexion's human resources director, Mary Lee, or to anyone else at Nexion about working unpaid overtime during the relevant period. ROA 408-409. Even if her supervisors knew she was working beyond her shift, they had no reason to suspect she was incurring *unpaid* overtime because she reported additional work on nearly every shift and received overtime in nearly every pay period. ROA 202-271, 408, 418. Robinson thus "fail[ed] to notify [Nexion] or deliberately prevent[ed] [Nexion] from acquiring knowledge of the overtime work." *See Newton*, 47 F.3d at 748. Because Nexion regularly paid Robinson for overtime that she included in these time records, it "was entitled to rely on the representations [Robinson] made on [her] time cards and was permitted to assume that [Robinson] was working no additional overtime. *See Uhler*, 1999 WL 20949, at *6. Therefore Nexion's alleged "failure to pay for the overtime hours is not a violation of § 207." *See Newton*, 47 F.3d at 748.

4. The instruction to work off the clock Robinson alleged to receive is insufficient to establish a fact issue as to Nexion's knowledge.

A plaintiff's allegation that her supervisor instructed her to work off the clock does not, standing alone, establish a genuine issue of material fact on an overtime claim where (1) the plaintiff deliberately underreported her time and (2) the plaintiff actually reported overtime and was paid for it. *See Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) ("*Ihegword II*"). The facts in *Ihegword* are virtually identical to this case. The plaintiff, a nurse, alleged her supervisor required her to complete her paperwork off the clock if she could not finish it during her scheduled shift. *Ihegword II*, 555 F. App'x at 374. The employer discouraged nurses from taking overtime and required nurses to get approval for before taking any. *Id*. The plaintiff said she was "instructed to clock out before completing her work" and often worked unpaid overtime. *Id*. The Fifth Circuit nevertheless affirmed the trial court's granting the employer summary judgment. The employer required its nurses to track their time with an electronic badge system, which the plaintiff used. *Ihegword I*, 929 F. Supp. 2d at 666. The plaintiff testified, however, that she deliberately underreported her time. *Ihegword II*, 555 F. App'x at 375 ("Ihegword stated that she tried 'as much as possible not to show in [her time card reports] the extent that [she worked overtime]' after clocking out.) (alterations in original)). The district court held, and the Fifth

Circuit agreed, that the plaintiff failed to produce evidence that the employer knew she had worked uncompensated overtime. *Ihegword II*, 555 F. App'x at 376.

Similarly, in *Harvill*, the district court granted summary judgment for the employer in an off-the-clock work case even though the plaintiff alleged her supervisor instructed her to submit false time sheets stating she had worked from 8:00 a.m. to 5:00 p.m. *Harvill v. Westward Comm'cs, LLC*, 311 F. Supp. 2d 573, 584 (E.D. Tex. 2004) ("*Harvill I*"), *aff'd* 433 F.3d 428 (5th Cir. 2005). The employer did not permit employees to work unauthorized overtime, and the plaintiff's instructor specifically instructed the plaintiff not to work overtime. *Id*. The plaintiff also did not make any demand for overtime pay from the company. *Id*. And she failed to alert the employer's human relations director about unpaid overtime, as required by company policy. *Id*. The court thus concluded that the plaintiff's general allegations that the employer knew she was working additional hours were insufficient to show the employer had constructive knowledge of unpaid overtime. *Id*. The Fifth Circuit affirmed, ruling that the plaintiff's assertion that her manager required her to turn in inaccurate time sheets did not create a fact issue because her testimony was not substantiated. *Harvill II*, 433 F.3d at 441.

Just as in this case, the plaintiff in *Ihgeword I* frequently logged time working beyond her shift and received overtime pay for work she performed on the

clock. *Ihegword I*, 929 F. Supp. 2d at 665. And, because of this, the employer's time and pay records thus "soundly refuted" the plaintiff's allegations. *See id.* Similarly, Robinson was paid extensively for overtime she claimed, she has not challenged the time records Nexion proffered nor did she complain about overtime while Nexion employed her, and Nexion instructed its employees not to work unauthorized overtime. These precise factors led the court in *Harvill* not to permit the plaintiff to recover on their FLSA Claims. *See Harvill II*, 433 F.3d at 441. Thus, Robinson has failed to demonstrate based on these allegations that Nexion knew or should have known about her claimed overtime.

## F. Conclusion

For the foregoing reasons, Nexion requests that this Court affirm the district court's decision in all respects or affirm the district court's decision on the alternative ground Nexion presented.

DATED: March 16, 2016

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ John B. Brown

JOHN B. BROWN
Texas State Bar No. 00793412
ALICIA VOLTMER
Texas State Bar No. 00797605
JOSEPH A. MAGLIOLO
Texas State Bar No. 24074634
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Preston Commons West
8117 Preston Road. Suite 500
Dallas, Texas 75225
Telephone: 214.987.3800
Facsimile: 214.987.3987

ATTORNEYS FOR DEFENDANT-APPELLEE

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6897 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

DATED: March 16, 2016

/s/ John B. Brown
John B. Brown
Attorney of Record for Defendant-Appellee

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that:

1) All required privacy redactions have been made per 10th Cir. R. 25.5;

2) The hard copies of Appellant's Reply Brief to be submitted to the Court are exact copies of the ECF submission;

3) The ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program by Symantec EndPoint Protection Product Version: 12.1, up to date as of March 16, 2016, 9:30 AM (CST), and is free of viruses.

DATED: March 16, 2016

/s/ John B. Brown
John B. Brown
Attorney of Record for Defendant-Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2016, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ John B. Brown
John B. Brown
Attorney of Record for Defendant-Appellee

24034284.2